**GUTRIDE SAFIER LLP**
Stephen M. Raab
113 Cherry Street, #55150
Seattle, WA 98140-2205
Telephone: (415) 639-9090 x109

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KALESHA NILES and JASON LAHEY, on behalf of themselves, the general public, and those similarly situated, | Civil Action No.: 2:19-cv-01902 |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| BEVERAGE MARKETING USA, INC., HORNELL BREWING CO., INC., ARIZONA BEVERAGE COMPANY LLC, ARIZONA BEVERAGES USA LLC, and ARIZONA ICED TEA LLC, | |
| Defendants. | |

1.    Plaintiffs Kalesha Niles and Jason Lahey, by and through their counsel, bring this class action against Beverage Marketing USA, Inc., Hornell Brewing Co., Inc., AriZona Beverage Company LLC, AriZona Beverages USA LLC, and AriZona Iced Tea LLC (collectively, "Defendants") on behalf of themselves, the general public, and those similarly situated for common law fraud, deceit and/or misrepresentation, breach of express and implied warranties, unjust enrichment/restitution, and violations of statewide consumer protection statutes. The following allegations are based upon information and belief, including the investigation of Plaintiffs' counsel, unless stated otherwise

2.    Defendants are among the world's largest producers of canned and bottled beverages. Defendants' beverages are sold throughout the United States in convenience stores and supermarkets such as Walmart, Kroger, Safeway, Costco, and Target.

3.    Defendants' flagship product is "Green Tea with Ginseng and Honey" (the "Product"). Defendants claim on their website that the Product is "America's best-selling green tea."

4.    To sell the Product, Defendants represent to consumers that it contains ginseng in an amount sufficient to provide energy to those who drink it. For example, on the 23-ounce can and gallon jug containers of the Product, they represent that the drink contains "Ginseng for energy." In addition, the Product title on the front of the containers has only six words, with "ginseng" appearing in capital letters: "Green Tea With GINSENG and HONEY."

5.    Consumers are familiar with the well-publicized benefits of consuming ginseng. Ginseng is believed to be a cure for low energy, and is purported to have other health benefits.

6.    Defendants themselves credit the presence of ginseng for the success of the Product. On the primary webpage that Defendants designed for the Product, Defendants ask the question "Ever wonder how it became so popular?" They answer it by saying that

the Product contain "100% natural green tea," as well as "just the right amount of ginseng," and premium honey.[1]

7.     The Product, however, does not contain any detectible amounts of ginseng, if indeed it contains any ginseng at all. Accordingly, Defendants' representations that (i) the Product has enough ginseng to provide energy; and (ii) the Product has "just the right amount of ginseng," are demonstrably false.

8.     Defendants apparently decided to use, at best, a miniscule, scientifically undetectable amount of ginseng in the Product (or, more likely, to entirely omit ginseng from the Product), to increase their revenues. Over the past decade, demand for ginseng has skyrocketed while supply has dwindled, causing prices to surge above $1,000 per pound. Ginseng is so coveted in the marketplace that certain species of ginseng have been harvested to the edge of extinction. Defendants know that if they were to use enough ginseng in the Product to actually provide energy to consumers, their revenues and competitive advantage would suffer.

9.     Defendants never disclosed to consumers that the Product does not contain enough ginseng to provide energy. Defendants' misrepresentations and omissions have misled millions of consumers and caused them to pay a premium for the Product.

## PARTIES

10.   Kalesha Niles is, and at all times alleged in this Class Action Complaint was, an individual and resident of Gloversville, New York.

11.   Jason Lahey is, and at all times alleged in this Class Action Complaint was, an individual and resident of Lee's Summit, Missouri.

12.   Defendant Beverage Marketing USA, Inc. is a corporation existing under the laws of the State of the New York, having its principal place of business at 60 Crossways Park Drive, Suite 400, Woodbury, NY 11797.

---

[1] *See* https://www.drinkarizona.com/product/green-tea-with-ginseng-honey (last accessed March 28, 2019).

Class Action Complaint

13.   Defendant Hornell Brewing Co., Inc. is a corporation existing under the laws of the State of the New York, having its principal place of business at 60 Crossways Park Drive, Suite 400, Woodbury, NY 11797.

14.   Defendant AriZona Beverages USA LLC is a company existing under the laws of the State of New York, having its principal place of business at 60 Crossways Park Drive, Suite 400, Woodbury, NY 11797.

15.   Defendant AriZona Beverage Company LLC is a company existing under the laws of the State of New York, having its principal place of business at 60 Crossways Park Drive, Suite 400, Woodbury, NY 11797.

16.   Defendant AriZona Iced Tea LLC is a company existing under the laws of the State of New York, having its principal place of business at 700 Columbia Street, Brooklyn, NY 11231.

17.   At all times herein mentioned, each of the Defendants was the agent, servant, representative, officer, director, partner or employee of the other defendants and, in doing the things herein alleged, was acting within the scope and course of his/her/its authority as such, and with the permission and consent of each Defendant.

18.   At all times herein mentioned, each of the Defendants was a member of, and engaged in, a joint venture, partnership and common enterprise, and acted within the course and scope of, and in pursuance of, said joint venture, partnership and common enterprise.

19.   At all times herein mentioned, the acts and omissions of each of the Defendants concurred and contributed to the various acts and omissions of each and all of the other Defendants in proximately causing the injuries and damages as herein alleged.

20.   At all times herein mentioned, each of the Defendants ratified each and every act or omission complained of herein.

21.   At all times herein mentioned, each of the Defendants aided and abetted the acts and omissions of each and all of the other Defendants in proximately causing the damages, and other injuries, as herein alleged.

## JURISDICTION AND VENUE

22.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and this action is a class action in which at least one member of the class is a citizen of a State different from the defendants.

23.   The injuries, damages and/or harm upon which this action is based, occurred or arose out of activities engaged in by Defendants within, affecting, and emanating from, the State of New York. Defendants intentionally advertised the Product in the state of New York, representing that it contains "Ginseng for energy" and distributed products to New York knowing they would be sold at retail to consumers such as Plaintiff Niles. Plaintiff Niles purchased the product in the state of New York based on Defendants' misrepresentations.

24.   Defendants regularly conduct and/or solicit business in, engage in other persistent courses of conduct in, and/or derive substantial revenue from products provided to persons in the State of New York.

25.   This Court also has general personal jurisdiction over Defendants because Defendants maintains its corporate headquarters in Woodbury, New York. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

26.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the State of New York, including within this District.

## SUBSTANTIVE ALLEGATIONS

27.  The non-alcoholic beverages market is fiercely competitive. Beverage producers continually attempt to gain market share in various ways, including by touting the ingredients in their products and the positive ways that those ingredients will affect the consumer.

28.  Operating under the brand name "AriZona," Defendants are large companies that produce, market, and distribute non-alcoholic beverages for sale to consumers.

29.  Defendants understand that consumers are increasingly health-conscious and interested in consuming beverages that are healthy. At the same time, with the recent explosion of the energy drink market, Defendants also understand that consumers are increasingly interested in consuming beverages that provide energy, including by natural means.

30.  By deciding to advertise the Product—their flagship beverage—as containing ginseng, Defendants have been able to capitalize on both of these market trends. Defendants effectively represent to consumers that they can consume a healthy beverage, while at the same time gaining energy from the ginseng, a natural product. Defendants know, however, that their representations are false; the Product does not contain enough ginseng to provide energy to consumers, if indeed it contains any ginseng at all.

### A.  Defendants' Misrepresentations

31.  Defendants repeatedly represent to consumers on the Product itself that it contains ginseng. The front of the label for the gallon jug of the Product states as follows:



32.  Likewise, the front of the label for the 23-ounce can appears as follows:



33.  As can be seen in the two photographs above, the title of the Product is "Green Tea With GINSENG and HONEY," clearly representing to consumers that the product contains ginseng.

34.  Defendants also repeatedly represent to consumers that the amount of ginseng in the Product is enough to provide energy to those who drink it. The back of the label for the gallon jug of the Product appears as follows:

Class Action Complaint

35.   Similarly, the back of the label for the 23-ounce can of the Product appears as follows:



36.   As can be seen in the two photographs above, the containers for the Product prominently state that the Product contains "Ginseng for energy."

37.   The representation that the Product contains "Ginseng for energy" was uniformly communicated to Plaintiffs and every other person who purchased the gallon jug and 23-ounce can of the Product during the proposed class period

38.   Defendants' website also represents to consumers that the Product contains a substantial amount of ginseng. On the primary webpage that Defendants designed for the Product, Defendants ask the question "Ever wonder how it became so popular?" They answer it by saying that the Product contains "100% natural green tea," as well as "just the right amount of ginseng," as well as premium honey.

39.   The Product, however, does not contain any detectible amounts of ginseng, if indeed it contains any ginseng at all.

40.   Plaintiffs' counsel retained two respected food laboratories to conduct three tests of the Product for ginsenosides—the main chemical constituent of ginseng. Although various samples of the Product were tested using incredibly sensitive equipment,[2] none of

---

[2] A ginsenoside would have been detected if it equaled or exceeded 0.624 mcg/g—

the three tests were able to detect *any* amount of ginsenosides in the Product. Thus, the testing confirmed that the Product contains either no ginseng at all, or, at best, an amount of ginseng that is so miniscule that it cannot be detected even by scientific tests and could not provide energy to a consumer.

41.   The laboratories also tested several competing products made by other beverage producers. Like the Product, those competing products were advertised as containing ginseng. The labs confirmed that the products made by competing brands, such as Republic of Tea and Starbucks, do contain ginseng.

42.   Defendants' representations misled reasonable consumers into believing that the Product contains sufficient ginseng to provide energy to those who consume it.

**B.   Consumer Demand for Ginseng**

43.     For thousands of years, ginseng has been used in Chinese medicine to treat numerous ailments. Ginseng is believed to boost both physical and mental energy.[3] In one study, for example, ginseng was shown to have antifatigue effects in patients with idiopathic chronic fatigue.[4] It is believed that main chemical constituents of ginseng, ginsenosides, is responsible for ginseng's positive effects.[5]

44.   The ginseng plant is slow growing and takes years to mature. In recent years, the demand for ginseng among has skyrocketed while supply has dwindled, causing prices to surge above $1,000 per pound.[6] The plant is so coveted that certain species of ginseng have been harvested to the edge of extinction.[7]

---

equivalent to 0.624 parts per million.
[3] *See, e.g.,* https://www.medicalnewstoday.com/articles/262982.php (last accessed March 29, 2019)
[4] *See* Kim HG et al., Antifatigue effects of Panax ginsing C.A. Meyer: a randomized, double-blind, placebo-controlled trial, PLoS One (April 17, 2013).
[5] *See, e.g.,* https://www.medicalnewstoday.com/articles/262982.php; Kim HG et al.
[6] *See, e.g.*, https://www.nationalgeographic.com.au/people/as-demand-for-ginseng-soars-poachers-threaten-its-survival.aspx

[7] *See id.*

45.   Defendants decided to use a miniscule, scientifically undetectable amount of ginseng in the Product (or to entirely omit ginseng from the Product), to increase their revenues. Defendants knew that if they were to use enough ginseng in the Product to actually provide energy to consumers, their revenues would suffer.

46.   Defendants' advertising and labeling of the Product as containing "Ginseng for energy" is false, misleading, and intended to induce consumers to purchase the Product, at a premium price, while ultimately failing to meet consumer expectations.

47.   Defendants engaged in the practices complained of herein to further their private interests of: (i) increasing sales of the Product, while decreasing the sales of competing beverages; and/or (ii) commanding a higher price for the Product because consumers will pay more for beverages containing ginseng in sufficient quantities to provide energy.

### C.      Plaintiffs' Experiences

48.   Plaintiff Niles has purchased the Product many times within New York over the past three years. For example, she purchased the gallon jug of the Product in February 2019 from Walmart in Gloversville, New York. Within the past three years, she also purchased the 23-ounce can of the Product. Before purchasing the Product, she read and relied on Defendants' representation that the Product contains "Ginseng for energy." Mrs. Niles believed this meant that the Product contained ginseng and that consuming it would provide the energy associated with ginseng consumption. At the time of each purchase, Mrs. Niles did not know that the Product did not contain an amount of ginseng capable of providing any energy, if it contained any at all.

49.   As a result of Defendants' misrepresentations and omissions, the Product has no, or, at, a minimum, a much lower, value to Mrs. Niles. Had Mrs. Niles known that the product does not contain enough ginseng to provide energy (or that the product does not contain any ginseng at all), she would not have purchased it or, at a minimum, would have paid less for it. Accordingly, Mrs. Niles was injured by paying more money for the Product than she would have paid were it not for Defendants' misrepresentations.

50.   Plaintiff Lahey has purchased the Product several times within Missouri over the past three years. For example, he purchased the gallon jug of the Product in September 2018 from a Hy-Vee grocery store in Lee's Summit, Missouri. Before purchasing the Product, he read and relied on Defendants' representation that the Product contains "Ginseng for energy." Mr. Lahey believed this meant that the Product contained ginseng and that consuming it would provide the energy associated with ginseng consumption. At the time of each purchase, Mr. Lahey did not know that the Product did not contain an amount of ginseng capable of providing any energy, if it contained any at all.

51.   As a result of Defendants' misrepresentations and omissions, the Product has no, or, at, a minimum, a much lower, value to Mr. Lahey. Had Mr. Lahey known that the product does not contain enough ginseng to provide energy (or that the product does not contain any ginseng at all), he would not have purchased it or, at a minimum, would have paid less for it. Accordingly, Mr. Lahey was injured by paying more money for the Product than he would have paid were it not for Defendants' misrepresentations.

52.   Plaintiffs continue to desire to purchase teas with quantities of ginseng sufficient to provide energy, including brands marketed and sold by Defendants. If Defendants' Product were reformulated to include a level ginseng sufficient to provide energy, Plaintiffs would likely purchase Defendants' products again in the future. Plaintiffs regularly visit stores where Defendants' beverages are sold. Because Plaintiffs do not know the formula for Defendants' Product and cannot test whether or not the beverages are made using ginseng before purchasing, Plaintiffs will be unable to rely on Defendants' labels when shopping for beverages in the future absent an injunction that prohibits Defendants from labeling their beverages with the phrase "Ginseng for energy" unless the Product is actually made using a level of ginseng sufficient to produce an effect. Further, because green tea contains caffeine, it would be particularly difficult for Plaintiffs to determine, after consuming a future formula of the beverage, whether any resulting feeling of energy is attributable solely to caffeine or to instead to ginseng that

may be in the formula. Likewise, because of changes in the market, Plaintiffs do not know at any given time, which brands are owned by Defendants and whether their representations about ginseng are truthful. Thus, Plaintiffs are likely to be repeatedly presented with false or misleading information when shopping for green tea and other beverages, making it difficult to make informed purchasing decisions. Should Defendants begin to market and sell a new brand of beverage, Plaintiffs could be at risk for buying another one of Defendants' products in reliance on the same or similar misrepresentation.

## CLASS ALLEGATIONS

53. Plaintiffs bring this action against Defendants, on behalf of themselves and all others similarly situated, as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs seek to represent the following groups of similarly situated persons, defined as follows:

> All persons who, between April 1, 2015 and the present, purchased the gallon jug or 23-ounce can of Arizona Green Tea with Ginseng and Honey in any state in the United States other than California (the "Class").

54. Plaintiff Niles also seeks to represent a subclass of those members of the Nationwide Class who purchased any Product in New York (the "New York Subclass").

55. Plaintiff Lahey also seeks to represent a subclass of those members of the Nationwide Class who purchased any Product in Florida (the "Missouri Subclass").

56. Plaintiffs and members of the proposed class have been economically damaged by their purchase of the Product because the advertising for the Product was and is untrue and/or misleading under New York law; therefore, the Product is worth less than what Plaintiffs and members of the Class paid for them and/or Plaintiffs and members of the Class did not receive what they reasonably intended to receive.

57.     As a direct and proximate result of Defendants' unfair and wrongful

conduct, as set forth herein, Plaintiffs and the class members: (1) were misled into

purchasing the Product; (2) received a product that failed to meet their reasonable

expectations and Defendants' promises; (3) paid a premium sum of money for a product

that was not as represented and, thus, were deprived of the benefit of the bargain because

the purchased product had less value than what was represented by Defendants; and (4)

ingested a substance that was other than what was represented by Defendants and that

Plaintiffs and class members did not expect.

58.     This action is properly brought and may be maintained as a class action

because it satisfies all of the prerequisites of Rule 23.

59.     Numerosity: Plaintiffs do not know the exact size of the class, but it far

exceeds 1,000 persons.

60.     Typicality: Plaintiffs are typical of the class because they were subject to

the same fraudulent scheme of Defendants as every other class member. They purchased

the Product based on Defendants' false representation that it contains "Ginseng for

energy." Like all other class members, they paid a premium as a result of that

misrepresentation and suffered economic injury as a result. Thus, Plaintiffs and the class

members sustained the same injuries and damages arising out of Defendants' conduct in

violation of the law. The injuries and damages of each class member were caused directly

by Defendants' wrongful conduct in violation of law as alleged.

61.     Adequacy:  Plaintiffs will fairly and adequately protect the interests of all

class members because it is in their best interests to prosecute the claims alleged herein to

obtain full compensation due to them for the unfair and illegal conduct of which they

complain. Plaintiffs have no interests that are in conflict with, or antagonistic to, the interests of class members. Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and those of the class. By prevailing on their claims, Plaintiffs will establish Defendants' liability to all class members. Plaintiffs and their counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the class members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for class members.

62.     Commonality and Predominance: This action involves common questions the common answers of which will drive the resolution of this case for all class members because each class member's claim derives from the deceptive, unlawful and/or unfair statements and omissions that led consumers to believe that the Product contains ginseng. The gallon jug and 23-ounce cans of the Product contained the representation "Ginseng for energy" throughout the class period. The Product's formula likewise remained unchanged. Thus, all of the central issues in this case will be resolved via common proof for all class members, establishing that common issues predominate over any individual issues. The questions of law and fact common to the Class are:

a)     whether the Product contains ginseng and, if so in what quantity;

b)     whether Defendants unfairly, unlawfully and/or deceptively misrepresented that the Product contains sufficient "Ginseng for energy";

c)     whether the use of the phrase "Ginseng for energy" on the display panel of the Product violated Federal and/or New York state law;

d)     whether the advertising of the product as having "Ginseng for

Class Action Complaint

energy" causes the Product to command a premium in the market as compared with similar products that do not make such a claim;

e)  whether Defendants' advertising and marketing regarding the Product sold to the class members was likely to deceive the class members and/or was unfair;

f)  whether the "Ginseng for energy" claim on Product packaging and advertising is material to a reasonable consumer's decision to purchase the Product;

g)  whether Defendants engaged in the alleged conduct knowingly, recklessly, or negligently;

h)  the amount of profits and revenues earned by Defendants as a result of their conduct;

i)  whether class members are entitled to restitution, injunctive and other equitable relief and, if so, what is the nature (and amount) of such relief; and

j)  whether class members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief.

63.  <u>Superiority</u>: There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the class will tend to establish inconsistent standards of conduct for Defendants and result in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense

that numerous individual actions would engender. Furthermore, as the damages suffered by each individual member of the class may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

64.    Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## PLAINTIFFS' FIRST CAUSE OF ACTION
### (Common Law Fraud, Deceit and/or Misrepresentation.)

65.    Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

66.    Throughout the last four years, Defendants fraudulently and deceptively informed Plaintiffs and the proposed class that the Product contains sufficient ginseng to provide energy to those who drink it.

67.    Defendants failed to inform Plaintiffs and class members that the Product does not contain any detectible amounts of ginseng (if indeed it contains any ginseng at all), so Defendants' claim that consumers can obtain energy from ginseng in the Product is false.

68.    These misrepresentations and omissions were known exclusively to and actively concealed by Defendants, and were not reasonably known or knowable to Plaintiffs or class members, and were also material at the time they were made. Defendants knew the composition of the Product and knew that it contained no detectable amounts of ginseng or ginsenosides. Defendants intended to deceive consumers through

their product label into believing that the Product contained "Ginseng for energy" when they knew it did not contain sufficient ginseng to impart any energy, as the misrepresentation was made prominently on the Product itself and reinforced through Defendants' advertising.

69. Defendants' misrepresentations and omissions concerned material facts that were essential to the analysis undertaken by Plaintiffs and class members as to whether to purchase the Product. Defendants breached their duty to Plaintiffs and to the proposed class by misleading them. Defendants also gained financially from, and as a result of, their breach.

70. Plaintiffs and those similarly situated relied to their detriment on Defendants' misrepresentations and fraudulent omissions. Had Plaintiffs and those similarly situated been adequately informed and not intentionally deceived by Defendants, they would have acted differently, by not purchasing the Product or, at a minimum, paying less for it.

71. By and through such fraud, deceit, misrepresentations and/or omissions, Defendants intended to induce Plaintiffs and those similarly situated to alter their position to their detriment. Specifically, Defendants fraudulently and deceptively induced Plaintiffs and those similarly situated to, without limitation, purchase the Product.

72. Plaintiffs and those similarly situated justifiably and reasonably relied on Defendants' misrepresentations and omissions, and, accordingly, were damaged by Defendants.

73.     As a direct and proximate result of Defendants' misrepresentations and/or omissions, Plaintiffs and those similarly situated have suffered damages, including, without limitation, the amount they paid for the Product.

74.     Defendants' conduct as described herein was wilful and malicious and was designed to maximize Defendants' profits even though Defendants knew that it would cause loss and harm to Plaintiffs and those similarly situated.

## PLAINTIFFS' SECOND CAUSE OF ACTION

### (Negligent Misrepresentation)

75.     Plaintiffs reallege and incorporate the above paragraphs of this Class Action Complaint as if fully set forth herein.

76.     Defendants negligently and falsely represented to Plaintiffs and those similarly situated that the Product contains "Ginseng for energy" which reasonably led consumers to believe that the Product contained sufficient ginseng to provide energy to those who drink it.

77.     Defendants expected, knew or should have known, at all relevant times, that reasonable consumers would rely on the statement "Ginseng for energy" and on the absence of adequate disclosures to the contrary and that the information provided to and withheld from Plaintiffs and class members would guide or influence them in their purchasing decisions and would result in an inflated price for the Product.

78.     In truth, the Product does not contain any detectible amount of ginseng (if indeed it contains any ginseng at all), so Defendants' claim that consumers can obtain energy from ginseng in the Product is false.

79.     Whether or not the Product contains ginseng in sufficient quantities to provide the energy associated with ginseng consumption was material to the decision of Plaintiffs and those similarly situated to purchase the Product. Had Plaintiffs and those similarly situated known that the Product does not contain ginseng sufficient quantities of ginseng to provide energy, they would have acted differently by, without limitation, not purchasing (or paying less for) the Product.

80.     Plaintiffs and those similarly situated were unaware of the falsity of Defendants' representations, and justifiably relied on them in purchasing the Product.

81.     Due to their justifiable reliance on Defendants' misrepresentations, Plaintiffs and those similarly situated suffered pecuniary loss.

## PLAINTIFFS' THIRD CAUSE OF ACTION
### (Unjust Enrichment)

82.     Plaintiffs reallege and incorporate the above paragraphs of this Class Action Complaint as if fully set forth herein.

83.     As a result of Defendants' unlawful and deceptive actions with respect to the  "Ginseng for energy" representation described above, Defendants were enriched at the expense of Plaintiffs and those similarly situated through their payment of monies to obtain the Product.

84.     The Product does not contain any detectible amounts of ginseng (if indeed it contains any ginseng at all).

85.     Under the circumstances, it would be contrary to equity and good conscience to permit Defendants to retain the ill-gotten benefits they received from Plaintiffs and those similarly situated.

86.     By reason of the foregoing, Plaintiffs and those similarly situated were damaged in the amount they paid to obtain the Product.

## PLAINTIFFS' FOURTH CAUSE OF ACTION

### (Breach of Express Warranty)

87.     Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

88.     Under state law, any affirmation of fact or promise made by the seller or manufacturer to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

89.     Under state law, any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

90.     Defendants' representation that the Product contains "ginseng for energy" is an affirmation of fact or promise or that the Product contains more than miniscule amounts of ginseng, and became part of the basis of the bargain to purchase the Product, creating an express warranty. In the alternative, the representation is a description of a good, which was made as part of the basis of the bargain to purchase the Product, and which created an express warranty that the Product would conform to the Product description.

91.     Plaintiff and class members reasonably and justifiably relied on the foregoing express warranty, believing that the Product did in fact conform to the warranty.

92.     Defendants breached these express warranties because the Product was not made using ginseng root, and contained, at best, only miniscule amounts of a ginseng, which was insufficient to impart any energy or other health benefit consumers associate with ginseng. Defendants knew that their express promise was false, but intentionally misled consumers anyway. Defendants have, as a result, breached its express warranty.

93.     Defendants' breach of its express warranties damaged Plaintiffs and those similarly situated. Were it not for Defendants' false affirmations, promises, and descriptions of the Product, Plaintiff and those similarly situated would have acted differently by, without limitation, not purchasing (or paying less for) the Product. Defendants damaged Plaintiff and members of the class in an amount to be determined at trial.

## PLAINTIFF'S FIFTH CAUSE OF ACTION

### (Breach of Implied Warranty)

94.     Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

95.     Under state law, a warranty that goods are merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. The warranty of merchantability extends to the end user (i.e., the consumer) of the products.

96.     As manufacturers, Defendants are merchants with respect to all sales of the Product. Under the law a warranty of merchantability is implied in every contract for the sale of the Product, including the sales to Plaintiffs and class members.

97.     Under state law, merchantable goods must be adequately contained, packaged, and labeled as the agreement may require; and must also conform to the promises or affirmations of fact made on the container or label.

98.     The Product was not adequately contained, packaged, or labeled as required for its sale to Plaintiffs and those similarly situated required. In particular, Defendants' representations required that the Product contains "Ginseng for energy" but the Product does not contain any detectible amounts of ginseng (if indeed it contains any ginseng at all).

99.     Defendants' representation on the Product that the Product contains "Ginseng for energy," is also a promise or affirmation of fact to Plaintiff and class members.

100.    However, the Product does not conform to Defendants' promises and affirmations of fact because the Product does not contain any detectible amounts of ginseng (if indeed it contains any ginseng at all).

101.    Defendants knowingly and intentionally breached their implied warranty of merchantability for the Product.

102.    Had Plaintiffs and class members known that the Product does not conform to Defendants' representations, they would not have purchased the Product or would have, at minimum, paid less for the product. As a direct and proximate result of Defendants' breach of warranty, Plaintiffs and members of the class have been injured in an amount to be determined at trial.

**PLAINTIFF' SIXTH CAUSE OF ACTION**

**(Violation of the Consumer Protection Acts of 49 States and the District of**

Columbia, Including, without limitation, New York General Business Law

("NYGBL") §§ 349 & 350)

103.    Plaintiff realleges and incorporates the above paragraphs of this Complaint as if fully set forth herein.

104.    Plaintiffs bring this claim on behalf of the Classes for violation of the consumer protection acts of each of the States of the United States, and the District of Columbia, other than California.

105.    Plaintiffs bring these statutory consumer protection claims pursuant to the substantially similar "Consumer Protection Acts" identified below, all of which were enacted and designed to protect consumers against unlawful, fraudulent, and/or unfair business acts and practices.

106.    The following consumer protection acts are collectively referred to herein as the "Consumer Protection Acts":

      a.     ALA. CODE § 8-19-1 et seq. (Alabama);

      b.     ALASKA STAT. ANN. § 45.50.471 et seq. (Alaska);

      c.     ARIZ. REV. STAT. ANN. § 44-1521 et seq. (Arizona);

      d.     ARK. CODE ANN. § 4-88-101 et seq. (Arkansas);

      e.     COLO. REV. STAT. ANN. § 6-1-101 et seq. (Colorado);

      f.     CONN. GEN. STAT. ANN. § 42-110a et seq. (Connecticut);

      g.     DEL. CODE ANN. tit. 6, § 2511 et seq. (Delaware);

      h.     D.C. CODE ANN. § 28-3901 et seq. (District of Columbia);

      i.     FLA. STAT. ANN. § 501.201 et seq. (Florida);

      j.     GA. CODE ANN. § 10-1-370 et seq. and GA. CODE ANN. § 10-1-390 et seq. (Georgia);

k.      HAW. REV. STAT. ANN. § 480-1 et seq. and HAW. REV. STAT. ANN. § 481A-1 et seq. (Hawai'i);

l.      IDAHO CODE ANN. § 48-601 et seq. (Idaho);

m.      815 ILCS 505/1 et seq. (Illinois);

n.      IND. CODE ANN. § 24-5-0.5-0.1 et seq. (Indiana);

o.      IOWA CODE § 714.16 et seq.

p.      KAN. STAT. ANN. § 50-623 et seq. (Kansas);

q.      KY. REV. STAT. ANN. § 367.110 et seq. (Kentucky);

r.      LA. STAT. ANN. § 51:1401 et seq. (Louisiana);

s.      ME. REV. STAT. tit. 5, § 205-A et seq. (Maine);

t.      MD. CODE ANN., COM. LAW § 13-101 et seq. (Mary-land);

u.      MASS. GEN. LAWS ANN. ch. 93A, § 1 et seq. (Massachusetts);

v.      MICH. COMP. LAWS ANN. § 445.901 et seq. (Michigan);

w.      MINN. STAT. ANN. § 325F.68 et seq., MINN. STAT. ANN. § 325D.09 et seq., MINN. STAT. ANN. § 325D.43 et seq., and MINN. STAT. ANN. § 325F.67 (Minnesota);

x.      MISS. CODE ANN. § 75-24-1 et seq. (Mississippi);

y.      MO. ANN. STAT. § 407.010 et seq. (Missouri);

z.      MONT. CODE ANN. § 30-14-101 et seq. (Montana);

aa.      NEB. REV. STAT. ANN. § 59-1601 et seq. (Nebraska);

bb.      NEV. REV. STAT. ANN. § 41.600 and NEV. REV. STAT. ANN. §598.0903 et seq. (Nevada);

cc.      N.H. REV. STAT. ANN. § 358-A:1 et seq. (New Hampshire);

dd.      N.J. STAT. ANN. § 56:8-1 et seq. (New Jersey);

ee.      N.M. STAT. ANN. § 57-12-1 et seq. (New Mexico);

ff.      N.Y. GEN. BUS. LAW. § 349 et seq. (New York);

gg.      N.C. GEN. STAT. ANN. § 75-1 et seq. (North Carolina);

hh.    N.D. CENT. CODE ANN. § 51-15-01 et seq. (North Dakota);

ii.    OHIO REV. CODE ANN. § 1345.01 et seq. (Ohio);

jj.    OKLA. STAT. ANN. tit. 15, § 751 et seq. (Oklahoma);

kk.    OR. REV. STAT. ANN. § 646.605 et seq. (Oregon);

ll.    73 PA. STAT. ANN. § 201-1 et seq. (Pennsylvania);

mm.    6 R.I. GEN. LAWS ANN. § 6-13.1-1 et seq. (Rhode Island);

nn.    S.C. CODE ANN. § 39-5-10 et seq. (South Carolina);

oo.    S.D. CODIFIED LAWS § 37-24-1 et seq. (South Dakota);

pp.    TENN. CODE ANN. § 47-18-101 et seq. (Tennessee);

qq.    TEX. BUS. & COM. CODE ANN. § 17.41 et seq. (Texas);

rr.    UTAH CODE ANN. § 13-11-1 et seq. (Utah);

ss.    VT. STAT. ANN. tit. 9, § 2451 et seq. (Vermont);

tt.    VA. CODE ANN. § 59.1-196 et seq. (Virginia);

uu.    WASH. REV. CODE ANN. § 19.86.010 et seq. (Washing-ton);

vv.    W.VA. CODE ANN. § 46A-6-101 et seq. (West Virginia);

ww.    WIS. STAT. ANN. § 100.20 (Wisconsin); and

xx.    WYO. STAT. ANN. § 40-12-101 et seq. (Wyoming).

107.    Plaintiffs and members of the Classes have standing to assert claims under the Consumer Protection Acts because they are consumers within the meaning of the Consumer Protection Acts and Defendants' practices were addressed to the market generally and otherwise implicate consumer protection concerns.

108.    Defendants have engaged in and continue to engage in the unfair, unlawful and deceptive trade practices outlined in this Class Action Complaint.

109.    Throughout the last four years, Defendants have unfairly and deceptively advertised and represented to Plaintiffs and class members that the Product contains

"Ginseng for energy." But Defendants failed to inform Plaintiffs and class members that the Product does not contain any detectible amounts of ginseng (if indeed it contains any ginseng at all), which was present in quantities too small to provide energy.

110.   Defendants intended for Plaintiffs and the Class members to rely on the unlawful, fraudulent, and/or unfair business acts and practices alleged herein.

111.   Plaintiffs and those similarly situated relied to their detriment on Defendants' unfair, deceptive and unlawful business practices.  Had Plaintiffs and those similarly situated been adequately informed and not deceived by Defendants, they would have acted differently by not purchasing (or paying less for) Defendants' Products.

112.   Defendants' acts and omissions are likely to deceive the general public.

113.   Defendants' actions, which were knowing, willful, and wanton, constitute intentional violations of the Consumer Protection Acts.

114.   Defendants engaged in these unfair practices to increase their profits.

115.   Accordingly, Defendants have engaged in unlawful trade practices, as defined and prohibited by the Consumer protection Acts.

116.   The aforementioned practices, which Defendants have used to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

117.   Plaintiffs seek, on behalf of those similarly situated, full damages, as necessary and according to proof, to restore any and all monies acquired from Plaintiffs, the general public, or those similarly situated by means of the unfair and/or deceptive trade practices complained of herein, plus interest thereon. Plaintiffs also seek to recover

attorneys' fees, costs, and expenses to be assessed against Defendants, within the limits set forth by applicable law.

118.    Plaintiffs seek, on behalf of those similarly situated, an injunction to prohibit Defendants from continuing to engage in the unfair trade practices complained of herein.

119.    Plaintiffs and those similarly situated are further entitled to and do seek both a declaration that the above-described trade practices are unfair, unlawful and/or fraudulent, and injunctive relief restraining Defendants from engaging in any of such deceptive, unfair and/or unlawful trade practices in the future.  Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate Consumer Protection Acts, unless specifically ordered to comply with the same. This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which Defendants are not entitled. Plaintiffs, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the Consumer Protection Acts alleged to have been violated herein.

120.    As a direct and proximate result of such actions, Plaintiffs and the other members of the Classes have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive, unfair and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is

in excess of the jurisdictional minimum of this Court. Among other things, Plaintiffs and the Classes lost the amount they paid for the Products.

121.    As a direct and proximate result of such actions, Defendants have enjoyed, and continue to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

122.    On October 22 and 26, 2018, other consumers, in a similar action pending in California, delivered demand letters to Defendants and their parent company via certified mail, to Defendants' registered agents.

123.    The letters described the above-referenced unfair and deceptive acts and practices, set forth the nature of the Classes' injury, and requested relief from Defendants within 30 days.

124.    Defendants did not respond to the letters within 30 days nor did Defendants tender any offer of settlement or other form of relief.

125.    The demand letters satisfy any notification or presentment requirements under the Consumer Protection Acts.

126.    Alternatively, providing notice to Defendants would have been futile in light of Defendants' failure to respond to these letters.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and those similarly situated, respectfully request that the Court enter judgment against Defendants as follows:

A.  Certification of the proposed Nationwide Class, and New York and Florida Subclasses, including appointment of Plaintiff's counsel as class counsel;

B.  An order temporarily and permanently enjoining Defendants from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in

this Complaint;

C.   An award of compensatory damages in an amount to be determined at trial;

D.   An award of statutory damages in an amount to be determined at trial;

E.   An award of punitive damages in an amount to be determined at trial;

F.   An award of treble damages;

G.   An award of restitution in an amount to be determined at trial;

H.   An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

I.   For reasonable attorney's fees and the costs of suit incurred; and

J.   For such further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury as to all issues.


Dated:  April 2, 2019                    **GUTRIDE SAFIER LLP**
                                         By: *s/ Stephen M. Raab*
                                         Stephen M. Raab
                                         113 Cherry Street, #55150
                                         Seattle, WA 98140-2205
                                         Telephone: (415) 639-9090 x109
                                         Email:  stephen@gutridesafier.com

                                         *Attorney for Plaintiffs*