**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
KALESHA NILES and JASON LAHEY, *on behalf of themselves, the general public and those similarly situated,*

                         Plaintiffs,                    **REPORT AND**
                                                                **RECOMMENDATION**
                -against-                        CV 19-1902 (SJF) (ARL)

BEVERAGE MARKETING USA, INC., HORNELL BREWING CO., INC., ARIZONA BEVERAGE COMPANY, LLC, ARIZONA BEVERAGES USA LLC and ARIZONA ICED TEA LLC,

                          Defendants.
----------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

       The plaintiffs, Kalesha Niles ("Niles") and Jason Lahey ("Lahey"), commenced this putative class action lawsuit on April 2, 2019, against the defendants, Beverage Marketing USA, Inc. ("BMU"), Hornell Brewing Co., Inc. ("Hornell"), Arizona Beverage Company LLC ("ABC"), Arizona Beverages USA LLC ("ABU") and Arizona Iced Tea LLC ("AIT") (collectively, "the defendants"), asserting claims for fraud, misrepresentation, breach of express and implied warranties, unjust enrichment/restitution and violations of multiple state consumer protection statutes. The crux of the plaintiffs' claim is that Arizona Green Tea with Ginseng and Honey is marketed by the defendants as containing "Ginseng for energy," but two different labs have been unable to detect any ginsenosides in the product, a key chemical compound allegedly found in ginseng. Before the Court, on referral from District Judge Feuerstein, is the motion of the defendants to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, the undersigned respectfully recommends that the motion be granted, in part.

## BACKGROUND

The following facts are drawn from the complaint and are accepted as true for purposes of the instant motion. *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993). These facts, however, do not constitute findings of fact by the Court. *See Colvin v. State University College at Farmingdale*, No. 13-CV-3595 (SJF)(ARL), 2014 U.S. Dist. LEXIS 85678, 2014 WL 2864224, at *1 n.1 (E.D.N.Y. June 19, 2014).

Niles is a resident of Gloversville, New York. Compl. ¶ 10. Lahey is a resident of Lee's Summit, Missouri. *Id.* ¶ 11. The defendants are among the world's largest producers of canned and bottled beverages. *Id.* ¶ 2. According to the complaint, BMU's, Hornell's, ABU's and ABC's principle place of business is Woodbury, New York. *Id.* ¶¶ 12-5. AIT's principle place of business is Brooklyn, New York. *Id.* ¶ 16. The defendants' flagship product is "Green Tea with Ginseng and Honey" ("Green Tea" or "the product"), which the defendants advertise as containing "Ginseng for energy." *Id.* ¶¶ 3, 34. Niles purchased the Green Tea at a Walmart in Gloversville, New York in February 2019. *Id.* ¶ 48. Lahey purchased the Green Tea at a Hy-Vee Grocery store in Lee's Summit, Missouri in September 2019. *Id.* ¶ 50.

According to the plaintiffs, the defendants represent to consumers that their Green Tea contains ginseng in an amount sufficient to provide energy to those who drink the product.[1] *Id.* ¶ 4. For example, the labels on the 23-ounce can and gallon jug containers of the product state that the Green Tea contains "Ginseng for energy." *Id.* In fact, the label on the front of the containers has only six words, with "ginseng" appearing in capital letters: "Green Tea with GINSENG and HONEY." *Id.* However, the plaintiffs' counsel retained two food laboratories to test the product for ginsenosides - the main chemical constituent of ginseng – and, according to the complaint,

---

[1] The plaintiffs also contend that consumers are familiar with health benefits of consuming ginseng. *Id.* ¶ 5.

2

the product does not contain any detectible amounts of ginsenoside. *Id.* ¶¶ 7, 11, 50. The plaintiffs allege that consumers are increasingly health conscious and seek out beverages that provide some sort of health benefit but the Green Tea does not contain enough ginseng to provide the health benefit that consumers are seeking. *Id*. ¶¶ 29-30.

## DISCUSSION

### A. Standards of Law

In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient "to raise a right to relief above the speculative level." *See Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 162 (E.D.N.Y. 2010), *aff'd,* 446 F. App'x 360 (2d Cir. 2011) (citing *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir.2010)). The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in which the court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss. District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [d]efendant has acted unlawfully." *Id*. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) (internal citations omitted)).

The defendants contend that a number of grounds exist to dismiss the complaint. Each of

the grounds will be addressed in turn.

### B. Standing to Seek an Injunction

To begin with, the defendants contends that Niles and Lahey lack standing to seek injunctive relief because they do not allege any risk of ongoing harm.[2] "To establish standing in federal court, a party must meet the minimum requirements imposed by Article III of the Constitution by alleging an actual case or controversy." *Buonasera,* 208 F. Supp. 3d at 560. "Specifically, 'a plaintiff must demonstrate that (1) he or she has suffered an injury; (2) the injury is traceable to the defendants' conduct; and (3) a federal court decision is likely to redress the injury." *Id.* (quoting *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998)). When seeking injunctive relief, "a plaintiff cannot rely on a past injury alone because '[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S. Ct. 1660, 1665, 75 L. Ed. 2d 675 (1983)). "Rather, the plaintiff must 'demonstrate that she is likely to be harmed again in the future in a similar way.'" *Id.* (quoting *Nicosia v. Amazon*, 834 F.3d 220, 239 (2d Cir. 2016)).

The plaintiffs have not alleged that they will be purchasing the Green Tea in the future. In fact, the complaint simply states that Niles purchased the Green Tea at a Walmart in February 2019 and Lahey he purchased the Green Tea at a Hy-Vee Grocery store in September 2019. Compl. ¶¶ 48, 50. The only reference to future purchases is set forth in paragraph 52, which provides:

---

[2] The Court notes that the defendants' standing argument should have been addressed pursuant to Rule 12(b)(1) not 12(b)(6). The inquiry on a motion to dismiss under Rule 12(b)(1) concerns whether the district court has the statutory or constitutional power to adjudicate the case. *Buonasera v. Honest Co., Inc.,* 208 F. Supp. 3d 555, 560 (S.D.N.Y. 2016)(citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "'A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.'" *Id.* "'[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *Id.* (quoting *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)).

> Plaintiffs continue to desire to purchase teas with quantities of ginseng sufficient to provide energy, including brands marketed and sold by Defendants. If Defendants' Product were reformulated to include a level ginseng sufficient to provide energy, Plaintiffs would likely purchase Defendants' products again in the future.

*Id.* ¶ 52. This allegation is insufficient to allege future injury. Accordingly, the undersigned agrees that the plaintiffs do not have standing to seek injunctive relief and respectfully recommends that they be barred from doing so.

### C.     The Doctrine of Conflict Preemption

The defendants next argue that the plaintiffs' state consumer protection law claims are preempted by the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 343, *et seq*. ("FDCA"). "Under the Supremacy Clause, U.S. Const., Art. VI, cl. 2, state laws that 'interfere with, or are contrary to the laws of Congress, made in pursuance of the [C]onstitution' are invalid." *Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG), 2010 WL 2925955, at *6 (E.D.N.Y. July 21, 2010)(citing *Gibbons v. Ogden*, 22 U.S. (9 Wheat) 1, 211, 6 L. Ed. 23 (1824)). As such, "[a]n otherwise valid state law is preempted if: (1) Congress expressly preempts the state law; (2) Congress completely occupies the law's field of operation; (3) compliance with both federal and state law is impossible; or (4) the state law presents an obstacle to the achievement of the full purposes and objectives of Congress.: *Id.* "[W]here Congress provides an express preemption clause, the presumption against preemption requires courts to read the clause narrowly." *Id.*

The FDCA explicitly preempts any state law that establishes any requirement for the labeling of food that is not identical to the requirement of the FDCA's

5

misbranding provisions.[3]  *See* 21 U.S.C. § 343-1(a)(2)-(3).  Pursuant to the regulations promulgated to implement the statute, "not identical to" means that "the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food" that are "not imposed by or contained in the applicable provision [or regulation]" or "[d]iffer from those specifically imposed by or contained in the applicable provision [or regulation]." 21 C.F.R. § 100.1(c)(4).  Accordingly, the plaintiffs may only escape the statutes preemptive force: "(1) if the plaintiffs' claims seek to impose requirements that are identical to those imposed by the FDCA; or (2) if the requirements plaintiffs seek to impose are not with respect to claims of the sort described in [the statute]."  *Ackerman*, 2010 WL 2925955, at *6.

In this case, the FDCA has established requirements for the use of the term ginseng.  Specifically, section §331d(b)(l ) of the FDCA provides:

> Notwithstanding any other provision of law, for purposes of the Federal Food, Drug, and Cosmetic Act
>
> (A)   the term "ginseng" may only be considered to be a common or usual name (or part thereof) for any herb or herbal ingredient derived from a plant classified within the genus Panax; and
>
> (B)   only labeling or advertising for herbs or herbal ingredients classified within that genus may include the term "ginseng."

*See* 21 U.S.C. § 331d(b)(l ).  While the state laws relied upon by the plaintiffs are not, in and of themselves, in conflict with §331d(b)(l ), the defendants argue, nonetheless, that if the plaintiffs are successful in this suit, the resulting labeling restrictions would create a new and conflicting standard for the labeling of products containing ginseng.

---

[3] The "FDCA prohibits the misbranding of food and drink." *See POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 108–09, 134 S. Ct. 2228, 2234–35, 189 L. Ed. 2d 141 (2014) (citing 21 U.S.C. §§ 321(f), 331).  A drink is considered to be misbranded if "its labeling is false or misleading." *Id.* (citing 21 U.S.C. § 343(a)).

The court disagrees with the analysis.

To begin with, the plaintiffs do not appear to be challenging or attempting to expand the FDCA's definition of ginseng. Rather, the plaintiffs assert that ginseng, as defined by the FDCA, is not present in the defendants' Green Tea. Even if the defendants are correct that the plaintiffs' lab tests were defective because the plaintiffs' labs searched for ginsenosides rather than Panax, read liberally, the plaintiffs' complaint asserts that there is not enough ginseng or "Panax" in the Green Tea to provide "energy." Moreover, the defendants have not pointed to any provision in the FDCA that addresses the use of the phrase "for energy." *See Silva v. Smucker Nat. Foods, Inc.*, No. 14-CV-6154 JG RML, 2015 WL 5360022, at *5 (E.D.N.Y. Sept. 14, 2015) (FDCA did not preempt claims because FDA had not promulgated any rule governing when food products may or may not be labeled "natural."). Therefore, the undersigned does not find merit in the defendants' preemption argument.

### D. Puffery

The defendants also argue that to the extent the plaintiffs rely on the term "just the right amount of ginseng" in support of their claims, that statement is non-actionable puffery. Although the plaintiffs insist, in their opposing memorandum, that the defendants misunderstood why they included the statement in the complaint, for the sake of clarification, the Court will discuss the defendants' puffery argument.

The Second Circuit has given little guidance on identifying puffery in the false advertising context. *See Avola v. Louisiana-Pac. Corp.*, 991 F. Supp. 2d 381, 392–94 (E.D.N.Y. 2013) (citing *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 159 (2d Cir. 2007). However, district courts typically rely on several factors in addressing

7

the issue of puffery in commercial cases: (i) vagueness; (ii) subjectivity; and (iii) inability to influence the buyers' expectations. *Id.* As Judge Chen noted in *Avola,* "the 'vagueness' factor applies when the disputed statements fail to describe a specific characteristic of the product on which the claims are based. *Id.; compare Gillette Co. v. Wilkinson Sword, Inc.*, No. 89 Civ. 3586, 1991 U.S. Dist. LEXIS 21006, at *53 (S.D.N.Y. Jan. 9, 1991) ("Claims . . . that misrepresent specific characteristics of a product . . . are not puffing."). For example, general descriptions about a product like "the fastest, easiest way to get online" or the "most dependable, long-lasting" constitutes puffery. *Id.* (citations omitted). "The 'subjectivity' factor applies when the disputed statements may not be measured on an objective basis, such as by reference to clinical studies or comparison with the product's competitors." *Avola,* 991 F. Supp. 2d at 393 (citing *Time War.* See Lipton v. Nature Co., 71 F.3d 464, 474 (2d Cir. 1995) ("Subjective claims about products, which cannot be proven either true or false, are not actionable [for false advertising claims]."). A statement that "a stereo system reflects the 'most life-like reproduction of orchestral and vocal sounds'" would satisfy the subjectivity factor. *Id.* Finally, "[t]he 'inability to influence' factor applies when, among other things, the disputed statements are made by all of the product's competitors, or these statements cannot mean everything that they suggest.'" *Id.* For example, "a statement that a sports beverage will 'Upgrade your game' is plainly an exaggeration, because no buyer truly believes that consuming this beverage 'result[s] in improved athletic abilities.'" *Id.* (citing *Stokely–Van Camp, Inc. v. Coca–Cola Co.*, 646 F. Supp. 2d 510, 529–30 (S.D.N.Y.2009)).

    In this case, the plaintiffs allege the following:

8

> As can be seen in the two photographs above, the containers for the Product prominently state that the Product contains "Ginseng for energy."
>
> \*       \*       \*
>
> Defendants' website also represents to consumers that the Product contains a substantial amount of ginseng. On the primary webpage that Defendants designed for the Product, Defendants ask the question "Ever wonder how it became so popular?" They answer it by saying that the Product contains "100% natural green tea," as well as "*just the right amount of ginseng*" [and] premium honey.

Compl. ¶¶ 36, 38 (emphasis added). The plaintiffs claim that these statements led them to believe that consuming the Green Tea would provide them with energy typically associated with ginseng consumption. *Id*. ¶¶ 48, 50. The Court agrees with the defendants that to the extent the plaintiffs intend to rely upon the statement "just the right amount of ginseng," that statement is inherently subjective and could not have reasonably influenced buyers of the Green Tea or shaped their expectations. However, the Court disagrees that the statement "contains 'Ginseng for energy'" is clearly puffery. Arguably, the presence of ginseng in the Green Tea, or the lack thereof, can be measured. Accordingly, the Court finds that the statement "just the right amount of ginseng" constitutes puffery as a matter of law and respectfully recommends that the plaintiffs be barred from relying on it in support of their claims but that the statement "Ginseng for energy" should remain in the case as it still raises a plausible issue for trial.

### E.     Rule 9(b)

The defendants further argue that the fraud claims lack specificity with respect to the individual corporate defendants. Specifically, the defendants contend that the plaintiffs have not alleged the "what, where and when" with regard to BMU, Hornell,

9

ABC, ABU and AIT, but have instead improperly grouped the defendants together with respect to the alleged fraudulent conduct. It is well-settled that "claims based on fraud are subject to the heightened pleading standard found in Fed. R. Civ. P. 9(b)." *F.D.I.C. v. U.S. Mortg. Corp.,* 132 F. Supp. 3d 369, 378–79 (E.D.N.Y. 2015). "In particular, a party asserting fraud 'must state with particularity the circumstances constituting fraud or mistake.'" *Id.* (citing Fed. R. Civ. P. 9(b)). Accordingly, "Rule 9(b) is [only] satisfied when the complaint specifies 'the time, place, speaker, and content of the alleged misrepresentations;' how the misrepresentations were fraudulent; and the details that 'give rise to a strong inference that the defendant[ ] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth.'" *Id.* (quoting *Schwartzco Enters. LLC v. TMH Mgmt., LLC,* 60 F. Supp. 3d 331, 344 (E.D.N.Y.2014)).

As the plaintiffs correctly state, there is, however, a recognized exception to this rule when the facts are peculiarly within the opposing party's knowledge. *Rahl v. Bande*, 328 B.R. 387, 415–16 (S.D.N.Y. 2005) (citing *DiVittorio v. Equidyne Extractive Indus., Inc*., 822 F.2d 1242, 1247 (2d Cir. 1987); *Luce v. Edelstein*, 802 F.2d 49, 54 n. 1 (2d Cir.1986)). Nevertheless, even in those instances, the plaintiffs must point to some specific facts upon which their belief that the defendants are all liable is based.[4] *See id.* Here, the plaintiffs have lumped the defendants together throughout the complaint with very little, if any, indication as to the relationship of the companies or the basis on which the plaintiffs believe them all to be tied to the manufacturing and advertisement

---

[4] For example, under a group pleading doctrine, if the named defendants are "'a narrowly defined group of highly ranked officers or directors who participated in the preparation and dissemination of a [published company document], plaintiffs are not expected to bear the burden of having to identify the role of each defendant in the fraud without the benefit of any discovery.'" Id. (citing *Elliott Assocs., L.P. v. Hayes*, 141 F. Supp. 2d 344, 354 (S.D.N.Y. 2000), aff'd, 26 F. App'x 83 (2d Cir. 2002)).

of the Green Tea.  Indeed, other than suggesting that several of the companies share an address, the complaint generally asserts that the conduct is attributable to all "defendants." For example, paragraphs 2 and 3 of the complaint allege that collectively the "Defendants are among the world's largest producers of canned and bottled beverages" and flagship product is "Green Tea with Ginseng and Honey." Compl. ¶¶ 2-3.  Paragraph 66 of the complaint alleges: "Throughout the last four years, Defendants fraudulently and deceptively informed Plaintiffs and the proposed class that the Product contains sufficient ginseng to provide energy to those who drink it." *Id*. ¶ 66.  Paragraph 67 alleges: "Defendants failed to inform Plaintiffs and class members that the Product does not contain any detectible amounts of ginseng (if indeed it contains any ginseng at all), so Defendants' claim that consumers can obtain energy from ginseng in the Product is false." *Id*. ¶ 66.  The undersigned recognizes that there may be some information concerning the production and advertisement of the product that is particularly within the defendants' control, but the allegations, nonetheless, lack any "particulars" required by Rule 9(b).

The same holds true for the second cause of action sounding in negligent misrepresentation.  While the Second Circuit has not explicitly ruled on whether Rule 9(b) applies to New York negligent misrepresentation claims, many courts have opted to apply Rule 9(b) to the negligent misrepresentation claims. *Schwartzco Enterprises LLC v. TMH Mgmt., LLC,* 60 F. Supp. 3d 331, 349–50 (E.D.N.Y. 2014).  Other courts have opted to apply Rule 9(b) only where the negligent misrepresentation claim is based on the same set of facts as those upon which a fraud claim is grounded. *Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 248 F. Supp. 3d 428, 453 (S.D.N.Y. 2017).

11

In this case, the negligent misrepresentation claim is virtually identical to the fraud claim. Accordingly, following the guidance of those courts opting to apply 9(b) to negligent misrepresentation claims under the circumstances presented in this case, the undersigned respectfully recommends that the first and second causes of action be dismissed with leave to amend. *Luce*, 802 F.2d at 56 ("Complaints dismissed under Rule 9(b) are 'almost always' dismissed with leave to amend.").

### F. Notice – Breach of Express Warranty

With respect to the fourth cause of action, asserting a claim for breach of the express warranty, the defendants argue that the plaintiffs failed to furnish them with notice prior to asserting the claim, and thus, the cause of action must be dismissed. To state a New York breach of warranty claim, a plaintiff must allege "(i) a material statement amounting to a warranty; (ii) the buyer's reliance on this warranty as a basis for the contract with his immediate seller; (iii) the breach of this warranty; and (iv) injury to the buyer caused by the breach."[5] *Avola*, 991 F. Supp. 2d at 391 (citing *CBS Inc. v. Ziff–Davis Publ'g Co.,* 75 N.Y.2d 496, 502–504, 554 N.Y.S.2d 449, 553 N.E.2d 997 (1990)). "According to the New York Uniform Commercial Code, '[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise,' and '[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.'" *Singleton v. Fifth Generation, Inc.,* No. 515 CV 474 BKS TWD, 2016 WL 406295, at *11 (N.D.N.Y. Jan. 12, 2016)(citing N.Y. U.C.C. Law § 2–

---

[5] For the purpose of this report, the Court need not analyze the cause of action under Missouri law. The plaintiffs have not identified any provision of Missouri law that would alter the result.

12

313(1)(a), (b)).  However, under New York law, a buyer must provide the seller with timely notice of an alleged breach of warranty.  *Id.* (citing N.Y. U.C.C. Law § 2–607(3)(a) ("Where a tender has been accepted ... the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.")).

Here, the plaintiffs do not deny the fact that they did not, themselves, provide the defendants with notice.  Rather, they argue that "other consumers, in a similar action pending in California," have put the defendants on notice of the nature of the injury and the relief request.[6]  Compl. ¶ 122.  Given the pendency of that suit, the plaintiffs suggest that any additional notice would be futile.  Even if the plaintiffs were correct that the defendant companies were on notice that there is an issue with the product by virtue of the California lawsuit, the plaintiffs have not pointed to any law that relieves them of their own obligation to provide notice before seeking a remedy.  *See Tomasino v. Estee Lauder Companies Inc.*, 44 F. Supp. 3d 251, 260 (E.D.N.Y. 2014) ("The purpose of the [the notice requirement] is not to inform the seller of his own act, but to reveal to him that the buyer chooses to assert the act as a breach and seek a legal remedy. . ..").  Accordingly, the undersigned further recommends that the fourth cause of action be dismissed.

### G. Breach of Implied Warranty

The defendants next move to dismiss the fifth cause of action for breach of the implied warranty of merchantability.  "Implied warranties include the implied warranty of merchantability and the implied warranty of fitness for a particular purpose." *Jackson*

---

[6] The reference to the pre-suit notice is set forth in the sixth cause of action alleging violations of the Consumer Protection Acts of forty-nine states and the District of Columbia.  Compl. ¶¶ 103-26.

13

*v. Eddy's LI RV Ctr., Inc.,* 845 F. Supp. 2d 523, 530–31 (E.D.N.Y. 2012). "In New York, any implied warranty of merchantability is governed by Section 2–314 of the New York Uniform Commercial Code ("UCC")," which provides, "'a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.'" *Id.* (citing N.Y.U.C.C. § 2–314(1)). In Missouri, the implied warranty of merchantability is governed by Section 400.2-314 and similarly provided that implied in a contract of sale is that good be merchantable. Mo. Ann. Stat. § 400.2-314 (West). Both provisions provide that the goods must be fit for the ordinary purpose for which they are used and of fair and average quality for such goods. *See e.g., Jackson,* 845 F. Supp. 2d at 530–31.

Here, the plaintiffs allege the Green Tea was not adequately contained, packaged, or labeled as required for its sale because the defendants have misrepresented that the Green Tea contains "Ginseng for energy." Compl. ¶ 98. This allegation alone does not give rise to a claim for breach of an implied warranty. Although the UCC does require a seller to guarantee that its goods are fit for the intended purpose for which they are used, "the warranty does not mean that the product will fulfill a 'buyer's every expectation.'" *Silva*, 2015 WL 5360022, at *11. It simply "provides for a minimum level of quality." *Id.* Moreover, "[w]here the sale of a food or beverage is concerned, courts have ruled that the product need only be fit for human consumption to be of merchantable quality." *Id.* (citing Ackerman v. Coca-Cola Co., No. CV-09-0395 (JG), 2010 WL 2925955, at *25 (E.D.N.Y. July 21, 2010) (dismissing New York breach of implied warranty of merchantability claim for failure to establish beverage was not "merchantable" in that it did not meet "a minimum level of quality")). Although the

14

plaintiffs assert that the Green Tea does not conform to the promises the defendants made on the containers concerning the amount of ginseng in the product, the plaintiffs do not allege that the Green Tea is unfit for human consumption. Accordingly, the undersigned respectfully recommends that the breach of implied warranty claim also be dismissed.

### H.     Unjust Enrichment

Finally, the defendants seek to dismiss the unjust enrichment claim as it is duplicative of the tort claims asserted by the plaintiffs. To state a claim for unjust enrichment under New York law, a plaintiff must plead that (1) the defendant was enriched; (2) the enrichment was at the plaintiff's expense; and (3) the circumstances were such that equity and good conscience require the defendant to make restitution. *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 471 (E .D.N.Y.2013). Although under New York and Missouri law, a plaintiff may plead unjust enrichment as an alternative theory, the claim is only available when the defendant has not breached a contract nor committed a recognized tort. *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 567 (S.D.N.Y. 2016); *Dubinsky v. Mermart LLC*, 08 CV 1806, 2009 WL 1011503, at * 5 (E.D. Mo. Apr. 15, 2009), aff'd 595 F.3d 812 (8th Cir. 2010). Indeed, "'unjust enrichment is not a catchall cause of action' and it 'is not available where it simply duplicates, or replaces, a conventional contract or tort claim.'" *Buonasera,* 208 F. Supp. at 567 (quoting *Mahoney v. Endo Health Sols., Inc.,* No. 15 CV 984 1(DLC), 2016 WL 3951185 (S.D.N.Y. July 20, 2016)).

In this case, the Court finds that the unjust enrichment claim is duplicative of the plaintiff's other claims. Indeed, the plaintiffs allege that the unjust enrichment occurred

15

because of the defendants unlawful deceptive acts with respect to the "Ginseng for energy" representation. Compl. ¶ 83. Accordingly, the undersigned respectfully recommends that the third cause of action also be dismissed. *See Silva,* 2015 WL 5360022, at *12 (citing *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 483-4 (S.D.N.Y. 2014) (dismissing an unjust enrichment claim involving allegations that defendant misled consumers that its skincare products, which prominently displayed the phrase "Active Naturals," were made exclusively from natural ingredients)).

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served by the Court on the parties. Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 14 days. Failure to file objections within this period waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed R. Civ. P 72; *Mejia v. Roma Cleaning, Inc.*, No. 17-3446, 2018 U.S. App. LEXIS 28235, 2018 WL 4847199, at *1 (2d Cir. Oct. 5, 2018) ("Plaintiff has waived any objections to the Magistrate's finding" by failing to timely object); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997).


Dated: Central Islip, New York
      April 16, 2020

                                                         /s/
                                      ARLENE R. LINDSAY
                                      United States Magistrate Judge